**VIRGINIA:**

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**VIRGINIA STATE BAR EX REL.**
**FIFTH DISTRICT, SECTION I COMMITTEE**
**VSB DOCKET NO. 24-051-132394**

        Complainant,

v.                                   **Case No. 2025-6240**

**PHILLIP BEN-ZION LEISER**

        Respondent.

FILED
CIVIL MAIL

2025 OCT 14 P 1:41

CHRISTOPHER J. FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

### FINAL JUDGMENT MEMORANDUM ORDER
### (THREE-YEAR SUSPENSION)

THIS MATTER was heard on September 18, 2025, by a Three-Judge Circuit Court duly impaneled pursuant to Section 54.1-3935 of the Code of Virginia (1950) as amended, consisting of the Honorable Alexander R. Iden, Judge of the 26th Judicial Circuit; the Honorable Bradley B. Cavedo, Judge of the 13th Judicial Circuit; and the Honorable Cheryl V. Higgins, Judge of the 16th Judicial Circuit and designated Chief Judge ("Chief Judge") of the Three-Judge Circuit Court (collectively "the Court").

Bar Counsel Renu M. Brennan represented the Virginia State Bar ("VSB"). Respondent, having received proper notice of the proceeding, appeared *pro se*.

The Chief Judge swore the court reporter, and each member of the Court verified that they had no personal or financial interest that might affect or reasonably be perceived to affect their ability to be impartial in this matter.

WHEREUPON a hearing was conducted upon the Rule to Show Cause issued on May 12, 2025, against Respondent.[1] The Rule directed Respondent to appear and to show

---

[1] VSB Exh. 2 at pp. VSB 0151-0152.

cause why his license to practice law in the Commonwealth of Virginia should not be suspended, revoked, or otherwise sanctioned by reason of the allegations of ethical misconduct set forth in the Certification issued by a subcommittee of the Fifth District Committee, Section I of the VSB.

## DEMURRER

The Court heard argument on Respondent's Demurrer that (1) Rule of Professional Conduct 8.2 is unconstitutional and (2) the VSB failed to identify a particular jurist as a target of Respondent's allegedly false statements.  Respondent argued cases cited in his Demurrer including:

- o *N.Y. Times v. Sullivan*, 376 U.S. 254 (1964).

- o *Garrison v. Louisiana*, 379 U.S. 64 (1964).

- o *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991).

- o *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829 (1978).

- o *National Association for Advancement of Colored People v. Button*, 371 U.S. 415 (1963).

The VSB provided copies of the following cases in support of the propositions that Rule 8.2 is constitutional and that an objective standard applies when analyzing statements under Rule 8.2:

- o *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991).

- o *In re Snyder*, 472 U.S. 634 (1985).

- o *In re Sawyer*, 360 U.S. 622, 633 (1959) (Stewart, J., concurring in result).

- o *Sacher v. United States*, 343 U.S. 1, 9 (1952).

- o *United States v. Cooper,* 872 F.2d 1, 3 (1st Cir. 1989).

2

**Rule 8.2 Applies to Conduct, Not Protected Speech:**

- o *Garrison v. Louisiana*, 379 U.S. 64 (1964).

**Virginia Precedent:**

- o *Anthony v. Va. State Bar*, 270 Va. 601 (2005), *cert. denied*, 547 U.S. 1193 (2006).

- o *Moseley v. Va. State Bar*, 280 Va. 1 (2010), *cert. denied,* 552 U.S. 1040 (2011).

- o *Pilli v. Va. State Bar*, 269 Va. 391 (2005) *cert. denied*, 546 U.S. 977 (2005).

**States Upholding Rule 8.2 as Constitutional:**

- o *Deters v. Davis*, 2011 U.S. Dist. LEXIS 3836 (E.D. Ky. 2011).

- o *Ky. Bar Ass'n v. Blum*, 404 S.W.3d 841 (Ky. 2013).

- o *In re Shearin,* 765 A.2d 930 (Del. 2000), *cert. denied* , 534 U.S. 961 (2001).

- o *In re Wilkins,* 777 N.E.2d 714 (Ind. 2002) *cert. denied*, 540 U.S. 813 (2003).

- o *Att'y Grievance Comm'n v. Frost*, 85 A.3d 264 (Md. 2014).

- o *Office of Disciplinary Counsel v. Gardner,* 793 N.E.2d 425 (Ohio 2003), *cert denied*, 540 U.S. 1220 (2004).

- o *Bd. Of Prof'l. Responsibility v. Parrish*, 556 S.W.3d 153 (Tenn. 2018).

**Rule 8.2 Uses an Objective Standard:**

- o *In re Sandlin*, 12 F.3d 861 (9th Cir. 1993).

- o *In re Terry*, 394 N.E.2d 94 (Ind. 1979) *cert. denied*, 444 U.S. 1077 (1980).

- o *In re Palmisano*, 70 F.3d 483 (7th Cir. 1995).

- o *In re Cobb*, 838 N.E.2d 1197 (Mass. 2005).

- o *Fla. Bar v. Ray*, 797 So. 2d 556 (Fla. 2001), *cert. denied*, 535 U.S. 930 (2002).

- o *Idaho State Bar v. Topp,* 925 P.2d 1113 (Idaho 1996).

- o *In re Dixon*, 994 N.E.2d 1129 (Ind.2013).

o   *In re Graham,* 453 N.W.2d 313 (Minn. 1990).

o   *Miss. Bar v. Lumumba*, 912 So. 2d 871 (Miss.) *cert. denied*, 546 U.S. 825 (2005).

o   *In re Westfall,* 808 S.W.2d 829 (Mo. 1991).

o   *In re Holtzman,* 577 N.E.2d 30 (N.Y. 1991).

o   *Disciplinary Counsel v. Cramer*, 157 N.E.3d 756 (Ohio 2020).

o   *State ex re. Counsel for Discipline v. Gast,* 896 N.W.2d 583 (Neb. 2017).

o   *Disciplinary Counsel v. Shimko,* 983 N.E.2d 1300 (Ohio 2012).

o   *Chief Disciplinary Counsel v. Rozbicki,* 167 A.3d 351 (Conn. 2017).

o   *In re Evans*, 801 F.2d 703, 705 (4th Cir. 1986).

**The Rule Does Not Punish "Pure Opinion":**

o   *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990).

**The Rule Has a Legitimate Sweep and Is Not Overbroad:**

o   *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024).

o   *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984).

The Court then recessed to deliberate and consider the cases cited by Respondent and the VSB.

Following deliberations, the Court denied Respondent's demurrer based on *Barrett v. Virginia State Bar*, 272 Va. 260, 634 S.E.2d 341, 344 (2006) ("three-judge court was correct in concluding that the Rules applicable to these proceedings do not authorize a reviewing body to dismiss a complaint against a lawyer on demurrer.")

The Court ruled that Rule 8.2 properly limits protected speech. The Court observed that the constitutional precepts set forth in *N.Y. Times v. Sullivan*, 376 U.S. 254 (1964) do not apply to this attorney disciplinary proceeding as they were set forth under a much different scenario.

The Court also ruled that the VSB does not have to identify specific judges from

4

the Court of Appeals of Virginia or justices from the Supreme Court of Virginia as targets

of Respondent's allegedly false or reckless statements in order to allege misconduct under

Rule 8.2.

The Court noted Respondent's exception to its ruling.

## **MISCONDUCT PHASE**

The VSB introduced into evidence VSB Exhibits 1-29, which the Court admitted

without objection.

The VSB did not call any witnesses. The VSB reviewed Exhibits 11, 15, 23, and

25, the Orders of the Court of Appeals of Virginia and the Supreme Court of Virginia,

and Exhibits 13, 16, 24, and 27, Respondent's Petitions for Appeal and Rehearing to the

Court of Appeals of Virginia and the Supreme Court of Virginia, as well as Respondent's

Answer to the Certification at Exhibit 1B, and the Chief Judge's Brief in Opposition to

Respondent's Petition for Appeal, VSB Exh. 28. The VSB presented argument. The

VSB then rested.

Respondent did not present any exhibits or witnesses. Respondent did not dispute

that he made the statements at issue or that the sole basis for his statements in his briefs

were the Orders of the Court of Appeals of Virginia and the Supreme Court of Virginia,

VSB Exhs. 11, 15, 23, and 25. VSB Exh. 1B at p. VSB 0061. Respondent presented

argument. Respondent then rested.

Upon due deliberation and in consideration of the VSB's exhibits, Respondent's

admissions in his Answer, VSB Exh. 1B, and the parties' argument, the Court made the

following findings of fact by clear and convincing evidence:

## FINDINGS OF FACT

1. Respondent was admitted to the Virginia State Bar (VSB) in 1997 and was, at all relevant times, a member of the VSB.  VSB Exh. 3  (Membership Affidavit) at p. VSB 0153. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0027.

***NAG, Inc., v. Vorthman*, Record No. 230882**
**Supreme Court of Virginia**

2. Respondent represents defendant NAG, Inc. ("NAG") in *Robert George Vorthman, III v. NAG, Inc.* (CL19-4436) filed in December 2019 in the Circuit Court of Loudoun County ("the trial court").  Vorthman asserts claims under Va. Code § 40.1-29 (the Virginia Wage Payment Act), the federal Fair Labor Standards Act ("FLSA"), and California statutes and seeks unpaid wages and other damages against NAG.  VSB Exh. 4 (NAG Complaint filed December 6, 2019) at pp. VSB 0154-0168.  Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0027.

3. In January 2021, NAG moved to dismiss or transfer Vorthman's lawsuit for lack of subject matter of jurisdiction.  VSB Exh. 5 (Order Denying Motion to Dismiss or Transfer) at p. VSB 0169. Admitted by Respondent in substance at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0027.

4. On December 17, 2021, the trial court heard NAG's motion to dismiss.  Vorthman stipulated to the dismissal of two counts of the complaint.  The trial court denied NAG's motion to dismiss as to the remaining counts.  VSB Exh. 5 (Order Denying Motion to Dismiss or Transfer) at pp. VSB 0169-0173. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0027.

6

5. On January 18, 2022, Respondent filed objections to the Order, not yet entered, denying NAG's motion to dismiss. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0027.

6. On January 19, 2022, the Honorable James P. Fisher, the trial court judge, entered the Order denying NAG's motion to dismiss and directed NAG to answer within 10 days of the Order. The Order provided in part that "as a court of general jurisdiction" the trial court had authority to hear Vorthman's case and had personal jurisdiction over NAG, and venue was proper because most of the evidence and witnesses were in Virginia. VSB Exh. 5 (Order Denying Motion to Dismiss or Transfer) at pp. VSB 0169-0173. VSB Exh. 11 (Court of Appeals of Virginia's Order denying Petition for a Writ of Prohibition entered October 2, 2023) at p. VSB 0212. Admitted by Respondent at VSB Exh.1B (Respondent's Answer to Certification) at p. VSB 0027.

7. Vorthman had previously propounded discovery on NAG, and NAG did not respond to the discovery. VSB Exh. 11 (Court of Appeals of Virginia's Order denying Petition for a Writ of Prohibition entered October 2, 2023) at p. VSB 0212. Admitted by Respondent that Vorthman propounded discovery and NAG did not respond at VSB Exh. 1B (Respondent's Answer to Certification) at p. 0027.

8. In September 2022, the trial court ordered NAG to respond to the discovery and awarded Vorthman $4,565.00 in discovery sanctions, which included attorneys' fees, costs, and litigation-related expenses. VSB Exh. 11 (Court of Appeals of Virginia's Order denying Petition for a Writ of Prohibition entered October 2,

2023) at p. VSB 0212. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0028.

9. On October 28, 2022, the trial court entered default judgment against NAG on the issue of liability for failure to comply with the trial court's September 2022 order. Admitted by Respondent in substance except as to date of entry of order which was September 16, 2022. VSB Exh. 11 (Court of Appeals of Virginia's Order denying Petition for a Writ of Prohibition entered October 2, 2023) at p. VSB 0212. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0028.

10. On November 16, 2022, NAG noted its objections to the default judgment order. VSB Exh. 11 (Court of Appeals of Virginia's Order denying Petition for a Writ of Prohibition entered October 2, 2023) at p. VSB 0212. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0028.

11. On December 27, 2022, nearly one year after the trial court denied NAG's motion to dismiss, Respondent filed a petition for writ of prohibition in the Court of Appeals of Virginia ("CAV"). VSB Exh. 6 (Petition for Writ of Prohibition filed December 27, 2022) at pp. VSB 0174-0176. In January 2023, Respondent sought leave to correct NAG's petition, which the CAV granted. NAG's corrected petition requested the CAV issue a peremptory writ of prohibition,

> directing the Hon. James P. Fisher, Judge of the Loudoun County Circuit Court ("the trial court") to suspend any further proceedings in the underlying case that is the subject of this Petition, until the resolution thereof, followed by a final order, after a hearing, vacating all orders entered by the trial court in this case, and dismissing the complaint filed by Respondent/Plaintiff-below, Robert George Vorthman, III, without prejudice, on the grounds that the trial court lacks subject matter jurisdiction ("SMJ") over it. Petitioner further requests this Court remand the case to the trial court, with instructions to adjudicate the motion for sanctions currently

pending against Respondent, Vorthman, his counsel, and the Spiggle
Law Firm.

VSB Exh. 7 (Motion for Leave to File Corrected Petition and Corrected Petition)
at pp. VSB 0183-0184. VSB Exh. 8 (Court of Appeals of Virginia's Order entered
January 20, 2023) at p. VSB 0187. Admitted by Respondent at VSB Exh. 1B
(Respondent's Answer to Certification) at p. VSB 0028.

12. In February 2023, Vorthman filed an answer to the petition for a writ of

prohibition and memorandum of points and authorities in support of the answer.

VSB Exh. 9 (Vorthman's Answer to Petition for Writ of Prohibition) at pp. VSB

0188 to 0198. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer

to Certification) at p. VSB 0028.

13. By Order entered October 2, 2023, the CAV denied NAG's petition for a writ of

prohibition.

- The CAV summarized the gravamen of Respondent's complaint as

  follows:

  ...none of the causes of action Vorthman asserted in his complaint for
  unpaid wages were cognizable in the trial court. NAG, Inc.
  argues that Vorthman lacks statutory standing to assert the
  California law-based and federal claims. It further contends that
  Code § 40.1-29 did not confer a private right of action to litigants
  when Vorthman filed his complaint; rather, under Code § 40.1-29,
  Vorthman was limited to pursuing administrative remedies which
  he failed to do.

- The CAV rejected NAG's argument that the trial court lacked subject

  matter jurisdiction[2] and concluded that the trial court had jurisdiction to

---

[2] The CAV observed that

[t]he premise of NAG, Inc.'s argument conflates subject matter jurisdiction with
active jurisdiction. For example, NAG, Inc. does not argue that a FLSA claim
may never be brought in state court; it asserts only that Vorthman's claim does

adjudicate the claim arising under the FSLA and enter an order reflecting its adjudication, and that "[t]hat power suffices to foreclose the availability of the writ of prohibition NAG, Inc. seeks." (footnote omitted).

- The CAV held that "the writ is not available to NAG, Inc., for the relief it seeks[.]" namely to undo something that was done. Rather "[i]f the thing be already done, it is manifest the writ of prohibition cannot undo it, for that would require an affirmative act; and the only effect of a writ of prohibition is to suspend all action, and to prevent any further proceeding in the prohibited direction." *Hoffman Partnership v. Circuit Court,* 72 Va. App. 206, 217 (2020).

- Finally, the CAV stated that "[h]ere, NAG, Inc.'s clear legal remedy is to file an appeal at the appropriate time" and held "Therefore, because the Circuit Court of Loudoun County has jurisdiction over the subject matter

---

not satisfy the FLSA's requirements because it does not satisfy the definition of an "enterprise engaged in commerce or in the production of good for commerce." In addition, NAG, Inc. contends that Vorthman was not covered under the FLSA because he worked as a computer programmer. Similarly, NAG, Inc. maintains that Vorthman's claim under the Code § 40.1-29 is not viable because the statute provided only an administrative remedy when Vorthman filed his complaint and Vorthman is not entitled to retroactive application of statutory amendments that now permit a private cause of action. But NAG, Inc.'s arguments all address the trial court's active jurisdiction, not its power to adjudicate Vorthman's claim for money damages.

The CAV further elaborated, "[w]hether or not a claim is meritorious under the FLSA is wholly separate from the circuit court's *power* to adjudicate such claims." The CAV further discussed the holding in *Robinson v Barrow-Penn & Co., Inc.,* 194 Va. 632, 640 (1953) (affirming trial court's grant of summary judgment in employer's favor because an exemption under the FLSA precluded the employee's recovery) and noted, "[s]tated differently, the employee's "ineligibility for relief under the statute did not divest the circuit court of subject matter jurisdiction."

> of the controversy, and because NAG, Inc., has alternative remedies, we
>
> refuse the request for a writ of prohibition."

VSB Exh. 11 (Court of Appeals of Virginia's Order denying Petition for a Writ of

Prohibition entered October 2, 2023) at pp. VSB 0212-0217. Admitted by

Respondent as a correct summary of the Order and decision, with the exception of

errors corrected herein, at VSB Exh. 1B (Respondent's Answer to Certification)

at pp. VSB 0028-0029.

14. On October 26, 2023, NAG noted an appeal to the Supreme Court of

Virginia ("SCV") of the CAV's order denying its petition for a writ of

prohibition.  VSB Exh. 12 (Notice of Appeal submitted for filing

October 26, 2023) at pp. VSB 0218-0220. Admitted by Respondent at

VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0029.

15. On December 1, 2023, Respondent, on behalf of NAG, filed NAG's

Petition for Appeal with the SCV, VSB Exh. 13 at pp. VSB 0221-0267.

Respondent, on behalf of NAG, included the following statements, in his

argument:

- CAV further obfuscates the dispositive issues in this case, by
  blindly (and falsely) stating that NAG is confusing SMJ with
  'active jurisdiction.' Of course, CAV conveniently omits any
  discussion of the elements of active jurisdiction, because to do so
  would reveal the intellectual sophistry that suffuses its decision
  and its stated rationale therefor. (VSB Exh. 13 at p. VSB 0247).

- There is, perhaps, no greater abuse of power by a court than when
  it imposes significant monetary penalties and enters a money
  judgment against a party, despite the fact that it cannot lawfully
  exercise SMJ over the dispute. That is the current posture of this
  case. A trial court that knew or should have known it had
  absolutely no good faith basis upon which to exercise SMJ over
  this dispute, has nevertheless done so, willfully ignoring the legal
  limitations on its authority. CAV had the opportunity to correct
  this manifest injustice but instead chose to double down on the

trial court's intellectual sophistry. (VSB Exh. 13 at p. VSB 0263).

- The trial court clearly usurped jurisdiction it did not possess, and refused to dismiss Vorthman's lawsuit, leaving NAG with no meaningful remedy other than seeking a writ of prohibition, which, by deliberately avoiding addressing any of NAG's arguments, CAV disingenuously denied. The only question remaining is whether this Court will enter the only legitimate order it has the authority to enter--dismissing Vorthman's complaint, without prejudice, or directing the trial court to do so. (VSB Exh. 13 at p. VSB 0264).

Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0029.

16. On January 19, 2024, Vorthman filed his brief in opposition to NAG's Petition for Appeal. Admitted by Respondent. VSB Exh. 14 (Respondent/Plaintiff's Brief in Opposition to Petitioner/Defendant's Petition for Appeal) at pp. VSB 0268-0283. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0029.

17. By Order entered May 15, 2024, the SCV dismissed NAG's appeal for failing to make Judge Fisher, a necessary party, a party to the appeal. VSB Exh. 15 at p. VSB 0284. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0029.

18. On May 29, 2024, Respondent, on behalf of NAG, filed a petition requesting rehearing in the SCV, VSB Exh. 16 at pp. VSB 0285-0297. Respondent began by requesting the SCV:

reconsider its ill- conceived decision, which is wholly without merit, and is a product of this Court's deliberate denial of NAG's rights to procedural and substantive due process of law, guaranteed by the 14th Amendment to the U.S. Constitution and Article 1, § 11 of the Virginia Constitution. (VSB Exh. 16 at p. VSB 0286).

Respondent continued:

12

- This Court's effort, to create the impression that it has provided a reasoned explanation for its decision, by inserting, within its opinion, citations to legal precedents that are completely inapposite and irrelevant to the issue before the Court, is specious. (VSB Exh. 16 at p. VSB 0288).

- As a pretext for refusing to address the issue that was properly before it-whether the trial court had SMJ over the case, both CAV and this Court created straw-man arguments-the latest, from this Court, concerning the supposed lack of notice to Judge Fisher, whom this Court absurdly mischaracterized as a "necessary party," entitled to notice, thereby ignoring the reality that he has zero personal stake in this litigation. (VSB Exh. 16 at p. VSB 0289).

- This Court's newly-announced requirement, that preliminary to an appellate court's determination, whether the trial court correctly exercised SMJ over a case, it must confirm that the judge whose decision is at issue was *personally* served with notice of the filing of the appeal, is nothing more than an ephemeral *ad hoc* rule created by this Court, out of thin air, as a bespoke requirement custom-made for this case-and only this case, and which will evaporate, without a trace, upon its conclusion. By relegating the threshold issue of SMJ to the back of the bus, behind personal jurisdiction and notice jurisdiction, this Court has radically changed the jurisprudential landscape. Why then, has the Court been so reticent to issue a published decision pronouncing its new rule? The answer is that this Court has no intention of permitting such an absurd rule to survive beyond this case. (VSB Exh. 16 at pp. VSB 0289-0290).

- Both CAV's and this Court's rationales, for dismissing NAG's petition, are nothing more than smokescreens and utter chaff. Like chaff, the appellate courts' opinions were intended to distract the reader's attention away from NAG's SMJ arguments, and to redirect and refocus the reader on the courts' newly-created *ad hoc* requirements that serve as pretexts for their refusal to adjudicate the SMJ question. The inclusion of legal citations, within both courts' opinions, created the mirage that the courts' decisions were well-grounded in law, and that they had identified a new issue which rendered it unnecessary to address, or even acknowledge NAG's arguments. (VSB Exh. 16 at pp. VSB 0290-0291).

- But the conduct of both courts betrays not only their supreme lack of confidence in their own decisions, but also their understandable desperation, to draw as little attention as possible, to those decisions, which are easily shown to be completely unmoored from the rule of

13

law. There are numerous indicia, of both courts' affirmative knowledge, that the orders they entered in this case were wholly without merit and contrary to law. First, with respect to this Court's 5/15/24 order, it is noteworthy that not a single Justice was willing to append his name to it; they apparently and understandably sought to distance themselves from their own decision. (VSB Exh. 16 at p. VSB 0291).

- Second, neither CAV nor this Court has been willing to contradict NAG's position, and state that the trial court properly exercised SMJ over this case. The courts' deliberate avoidance, of answering that universally-recognized threshold question, is telling. Neither court wanted to tell a bold-faced lie, by falsely stating the trial court was correct, in exercising SMJ over the case. But neither court was willing to concede the truth-that the trial court could not legitimately exercise SMJ over this case. (VSB Exh. 16 at pp. VSB 0291-0292).

- By playing coy, and ignoring the issue that was properly before them-whether the trial court properly exercised SMJ over this case-the appellate courts have been able to avoid handing Leiser a win-something they are apparently desperate never to do, while simultaneously, skillfully maneuvering, in order to avoid explicitly stating the calumny, that the trial court correctly exercised SMJ. In order to avoid answering that threshold question, which, until this Court's decision, it has held every court is obligated to answer in the affirmative, before adjudicating any other issue, both appellate courts have spontaneously ruled the determination of SMJ cannot be undertaken, unless certain other pre-conditions have been met. CAV injected the issue of "active jurisdiction" into the case, and denied NAG's petition. This Court injected another new issue-lack of "notice and/or personal jurisdiction," based upon Judge Fisher's not having personally been sent notice, by NAG's counsel, of the filing of this appeal. (VSB Exh. 16 at VSB Exh. 0292).

- Third, it was critically important to both appellate courts, that they have not only the *final* word, concerning the issues they newly injected into this case, but also, that they have the *only* word concerning those issues. Both courts deprived NAG of the opportunity to be heard concerning, not only the SMJ issue raised by NAG, but also, the new issues injected into the case, and raised, *sua sponte,* by the appellate courts, for the first time, on appeal. Both courts understand Leiser possesses the intellect, the courage, and the tenacity to expose the intellectual sophistry that properly characterizes both appellate courts' decisions in this case. In order to minimize the chances that the courts' mendacity would be exposed, both courts deliberately deprived NAG's counsel of the opportunity to be heard. A court that was confident in

14

the integrity of its decision would welcome NAG's counsel into the lion's den, where the learned judges/Justices could school Leiser on the legal issues at hand, and demonstrate the depth, of the Mariana Trench of their vastly superior knowledge of the law. Instead, the lions are apparently cowering in the corner, afraid to allow Leiser entry into the arena. (VSB Exh. 16 at pp. VSB 0293-0294).

- Fifth, neither CAV nor this Court would even acknowledge a single one of NAG's arguments, raised in opposition to the trial court's exercise of SMJ. A court that is unwilling to acknowledge a litigant's argument is a court that is trying to conceal the existence of that argument. And just as 'the news is that which those in power do not want you to know,' (Dan Rather), so too, arguments that courts refuse to address, refuse to acknowledge, and effectively airbrush from the Record, by omitting any mention of them from their written decisions, are arguments the courts do not want the public to see, hear, or know about, because of their legitimate concern, that if the arguments were acknowledged to have been raised, the reader would correctly perceive the court's decision, in light of those unanswered arguments, as highly suspect, if not intentionally misleading and deceptive. (VSB Exh. 16 at pp. VSB 0294-0295).

- There is no greater abuse of judicial power than when a court exercises SMJ it does not have, and materially alters the substantive rights of the parties to a dispute. But the courts of this Commonwealth have refused to address the issue of their SMJ, and have permitted this case to proceed to a final judgment on the merits. In so doing, all three courts have demonstrated their disdain for NAG's procedural and substantive due process rights, thereby manifesting not only their contempt for the Constitution, but also, their disrespect for litigants and their counsel. (VSB Exh. 16 at p. VSB 0295).

Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to

Certification) at p. VSB 0029.

19. By Order entered July 1, 2024, the SCV denied NAG's petition for rehearing.

VSB Exh. 17 (Order of SCV entered July 1, 2024) at p. VSB 0298. Admitted

by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p.

VSB 0029.

***In Re: Virginia Citizens Defense League,*** **Record No. 230411**
**Supreme Court of Virginia**

20. Respondent represented the Virginia Citizens Defense League ("VCDL") in a defamation lawsuit filed in Fairfax Circuit Court against the Coalition to Stop Gun Violence ("CSGV"). VCDL filed its suit on August 10, 2021. On February 2, 2022, CSGV filed a demurrer and scheduled a hearing thereon on November 18, 2022. On February 25, 2022, without leave of court and in violation of Fairfax County Circuit Court Docketing Procedures, CCR-E-05 (Circuit Court Motions Docket Procedures) 6(D),(E), and (G), 10, 15(A) Respondent, on behalf of VCDL, filed a 16-page memorandum of law in opposition to the demurrer. VSB Exh. 18 (Petition for Writ of Mandamus filed November 18, 2022) at p. VSB 0303. VSB Exh. 20 (Memorandum of Law in Support of Petition for Writ of Mandamus) at p. VSB 0325. VSB Exh. 21 (Chief Judge's Response to Petition for Writ of Mandamus) at p. VSB 393. Admitted by Respondent as to all except for the violation of Fairfax County Circuit Court Docketing Procedures or Local Rules which Respondent contends were invalid and thus could not be violated at VSB Exh. 1B (Respondent's Answer to Certification) at pp. VSB 0029-30.

21. On May 5, 2022, Respondent and counsel for CSGV appeared at calendar control to schedule a date for a hearing on the demurrer. The calendar control judge required VCDL to refile its memorandum of law to comply with the five-page limit imposed by the Fairfax County Circuit Court local rule. Respondent did not refile VCDL's memorandum of points and authorities so that it complied with Fairfax County Circuit Court Local Rules. VSB Exh. 18 (Petition for Writ of Mandamus filed November 18,

2022) at p. VSB 0304. VSB Exh. 20 (Memorandum of Law in Support of Petition for Writ of Mandamus) at p. VSB 0326. VSB Exh. 21 (Chief Judge's Response to Petition for Writ of Mandamus) at pp. VSB 0393-0394. Admitted by Respondent as to all except for the violation of Fairfax County Circuit Court Docketing Procedures or Local Rules which Respondent contends were invalid and thus could not be violated at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0030.

22. Instead, on the date of the scheduled demurrer hearing, Respondent, on behalf of VCDL, filed a petition for writ of mandamus in the CAV requesting that the CAV (1) either strike Fairfax County Circuit Court Local Rules, CCR-E-05 (Circuit Court Motions Docket Procedures) 6(D),(E), and (G), 10, 15(A) or declare them invalid and of no force and (2) direct the Fairfax Circuit Court to accept for filing memoranda of law up to 20 pages, without first requiring leave of court. VSB Exh. 18 (Petition for Writ of Mandamus) at pp. VSB 0299-0315. Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p. VSB 0030.

23. On April 19, 2023, the CAV denied VCDL's petition for writ of mandamus. The CAV held that mandamus, an extraordinary remedy to compel performance of a ministerial, but not discretionary, duty did not lie for three reasons:

> 1. "Whether to impose or excuse a page limit for briefs involves a discretionary exercise of judgment; it is not a ministerial act."
>
> 2. VCDL "expressly allege[d] that [Fairfax Circuit Court] has adopted and regularly applies the rule [VCDL] seeks to undo."

"Mandamus does not lie to direct the circuit court to undo the

procedure it has established to ensure the timely and orderly

administration of its docket."

3. VCDL has an adequate remedy at law, "to invoke [the Fairfax

Circuit Court's] established procedure for leave to file an over-sized

brief, not mandamus."

VSB Exh. 23 (CAV's Order entered April 19, 2023) at pp. VSB 0434-

0436). Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to

Certification) at p. VSB 0030.

24. On May 3, 2023, Respondent submitted a petition for rehearing *en banc*,

VSB Exh. 24 at pp. VSB 0437-0494, in which Respondent stated as

follows:

- The three judges comprising the panel that issued the Court's
  decision denying VCDL's Petition for a Writ of Mandamus
  ("Petition"), apparently suffered a sudden, severe, simultaneous case
  of collective, selective amnesia. The Court's two-page written
  decision ignores each and every one of VCDL's arguments. It failed
  to address VCDL's arguments that the five-page rule creates-rather
  than eliminates-unnecessary delays and expenses and abridges
  substantive rights of the parties. (VSB Exh. 24 at p. VSB 0447).

- It shocks the conscience that three judges on an appellate panel
  conveniently ignored the pure question of law that poses the
  threshold question-whether the FCCC was imbued with the statutory
  authority to enact the five-page rule that is at the center of VCDL's
  Petition. (VSB Exh. 24 at p. VSB 0447).

- The fact that three appellate judges ignored it constitutes clear and
  convincing evidence they intentionally subverted the rule of law,
  depriving VCDL of its right, to both substantive and procedural due
  process of law, in violation of U.S. Const., Amend. XIV and Virginia
  Const. Art. 1, § 11. (VSB Exh. 24 at p. VSB 0448).

- The Court engaged in this chicanery, presumably, in order to
  advance its own self-serving agenda, which is apparently, to help its

18

colleagues on the FCCC create for themselves a sinecure-a job that does not require them to work too hard, think too much, and certainly, one that does not require them to read long, boring legal briefs with their citations to statutes, rules, and even longer appellate opinions. In other words, this Court's decision was designed to help ensure that the FCCC judges would not be required to do the actual work the job of a judge requires-to be and continue to become learned in the law. Instead, the Court's decision is designed to facilitate the continued delivery of justice 'light'-the fast-food drive-thru approach to deciding legal controversies that so many circuit courts, and in particular, FCCC, routinely engage in. (VSB Exh. 24 at p. VSB 0448).

- The Court effectively air-brushed from its decision any trace of that argument and the statutory authorities cited in support thereof. It did so in order to white-wash the Record and obfuscate, if not completely conceal from the public, VCDL's principal argument-that the five-page rule is in direct conflict with the last sentence of VA. R. S. Ct. 4:15(c), and is therefore in flagrant violation of the statutory scheme created by VA. CODE ANN. §§ 8.01-3, 8.01-4, and 17.1-503(A), and consequently is invalid as a matter of law. (VSB Exh. 24 at p. VSB 0449).

- The panel's "oversight" in failing to address the validity of the FFX rule demonstrates that, like many of the courts of this Commonwealth, it does not understand the concepts of procedural and substantive due process of law. (VSB Exh. 24 at p. VSB 0450).

- The panel's conscious decisions (i) not to address VCDL's argument that the FFX rule is statutorily invalid; and (ii) not to include, in its written decision, the relevant statutory language, or at least mention the statutes that were cited in VCDL's MoL filed in support of its Petition, is compelling evidence that the panel was eager to bury the issue. That is a tactic commonly used by trial and appellate courts alike. By airbrushing from their decisions any mention of inconvenient facts, inconvenient laws, and inconvenient arguments-that is, those that conflict with whatever a court's particular agenda happens to be, with respect to a particular case, the judiciary maintains the *appearance* that it is committed to the rule of law, when, in reality, many judicial decisions are completely unmoored from the rule of law. (VSB Exh. 24 at p. VSB 0451).

- By omitting any reference to inconvenient facts, laws, and arguments, courts are able to ensure that anyone reading their decisions will be left in the dark as to the meritorious arguments that were raised in opposition to the court's decision. In this case, the Court's omission of any mention in its decision, of the statutes cited

by VCDL, in support of its argument that the FFX rule is invalid, will ensure that when a stranger to the litigation-- for example, an attorney conducting legal research – reads the Court's decision, he will have absolutely no reason to question the Court's fidelity to the rule of law, and will not become cognizant of the statutory reasons why the five-page rule is invalid, as a matter of law. VSB Exh. 24 at pp. VSB 0451-0452).

- Only in that way, can We, the People, ensure that the courts of this Commonwealth conduct themselves with integrity and intellectual honesty, and that they remain faithful to the rule of law. In other words, every judge, in every case, in every court must provide a reasoned explanation that squarely addresses, *on the merits,* each and every argument raised by either counsel, or, alternatively, explains why the argument cannot, should not, or need not be addressed. (VSB Exh. 24 at p. VSB 0453).

- Contrary to what many judges apparently believe, the courts are not their personal playgrounds, where they remain free to make the rules, break the rules, ignore the rules, or change the rules, *sub silentio,* during the middle of a proceeding. (VSB Exh. 24 at p. VSB 0453).

- In order to conceal what they are doing, judges often hijack the narrative, and, as this Court so facile [sic] did, control it by excising from the Record any contravening laws, facts, or arguments. In that way, judges protect their ability to substitute their own personal preferences and predilections for the rule of law, while maintaining the pretense that their decision was faithful to the governing law. (VSB Exh. 24 at pp. VSB 0454-0455).

- Tyranny is defined as the arbitrary exercise of governmental power. It is unacceptably ironic that in the Commonwealth of Virginia, the Judicial branch of government, whose sacred duty it is to protect the People from tyranny of government, is, itself, the greatest source of tyranny in the lives of the People. We reject the double-standard created by the courts of this Commonwealth, in which there is a dichotomy between those who govern and those they govern-a justice system in which litigants and lawyers are bound by the rules but the Courts are free to disregard them, at their whim, without explanation, and by so doing, create the mirage that their decisions are governed by the rule of law. Despite what the judiciary, writ large, apparently believes, We, the People, are not dumb. We recognize the difference between intellectual honesty and intellectual sophistry; between judicial integrity and judicial chicanery; and between the rule of law and the whim of individual judges masquerading as the rule of law. (VSB Exh. 24 at p. VSB 0455).

- But We do not consent to the adjudication of our rights by judges who are committed to nothing other than their own personal whim and who apply the rule of law only when it facilitates whatever outcome they favor. To enable Us to hold them accountable, We insist that every judge in every court in every case adhere to the decision-making process described above-no exceptions and no excuses. (VSB Exh. 24 at p. VSB 0456).

- This Court's decision-making process, in which it has first selected its desired outcome, and then engineered its written decision to omit any reference to anything in the Record that would cast doubt upon that decision, including, whenever necessary, ignoring the governing law, is not atypical; it is not anomalous; and it is not an aberration. (VSB Exh. 24 at p. VSB 0456).

- We, the People, demand an end to the chicanery and incompetence that is so rampant within Virginia's judiciary. Both are forms of judicial corruption that profoundly erode the judiciary's credibility as a legitimate institution of justice. To paraphrase Justice Louis Brandeis, if the Courts want respect for the law then they must first make the law respectable. (VSB Exh. 24 at p. VSB 0457).

- We are routinely being misled and deceived by a judiciary, writ large, which insists the North star that governs its decisions is the rule of law, itself, which it claims to fiercely protect and defend, when, in fact, many judicial decisions reflect nothing more than the judiciary's efforts to protect its freedom of action, by hiding behind the opacity of its decision-making process, in order to conceal the *real* reasons for those decisions- reasons often have nothing, whatsoever, to do, with the rule of law. (VSB Exh. 24 at p. VSB. 0457).

- When judges subordinate the rule of law to their own personal agenda, they defile and desecrate our justice system. The panel's decision and the rationale it provided therefor, are a gift from this Court to the FCCC, ensuring that court's judges are not burdened with having to do the actual work the job requires. But its decision is also a judicial middle finger directed at VCDL, its counsel, Leiser, the Supreme Court of Virginia, the General Assembly, and, most disturbingly, to the constitutionally protected due process rights of litigants, and therefore, to the rule of law, itself. (VSB Exh. 24 at pp. VSB 0457-0458).

- Had the panel treated the issue that was properly before it, with intellectual honesty, it could not have reached the conclusion

21

contained within its decision. (VSB Exh. 24 at p. VSB 0458).

Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to

Certification) at p. VSB 0030.

25. On May 16, 2023, the CAV denied VCDL's petition for rehearing *en banc*.

VSB Exh. 25 (CAV Order entered May 16, 2023) at VSB Exh. 0495.

Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to

Certification) at p. VSB 0030.

26. On June 15, 2023, Respondent, on behalf of VCDL, noted an appeal to the

SCV from the CAV's April 19, 2023 Order denying VCDL's petition for

writ of mandamus and from the CAV's May 16, 2023 Order denying

VCDL's petition for a rehearing *en banc*. VSB Exh. 26 (Notice of Appeal

to SCV filed June 15, 2023) at pp. VSB 0496-0498. Admitted by

Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at p.

VSB 0030.

27. On June 15, 2023, Respondent, on behalf of VCDL, also filed a petition for

appeal to the SCV, VSB Exh. 27 at pp. VSB 0499-0541. Respondent

identified four assignments of error. Respondent stated as follows in

VCDL's petition for appeal:

- CAV's two-page written decision denying VCDL's Petition ignored each and every one of VCDL's arguments. For example, it failed to address VCDL's arguments that the five- page rule creates-rather than eliminates-unnecessary delays and expenses and abridges substantive rights of the parties. But even more shockingly, its decision conveniently ignored the pure question of law that posed the threshold question-whether the FCCC was imbued with the statutory authority to enact the local five-page rule that is at the center of VCDL's Petition for a Writ of Mandamus. (VSB Exh. 27 at pp. VSB 0522-0523).

- The fact that all three appellate judges assigned to the panel ignored it compels one of two conclusions: either all three judges suffered a

simultaneous, spontaneous, severe case of collective, selective amnesia, or else they intentionally subverted the rule of law, by declining to address the central issue in dispute-whether the local rule is statutorily invalid. By doing so, CAV thereby deprived VCDL of its right to both substantive and procedural due process of law, in violation of U.S. Const., Amend. XIV and Virginia Const. Art. I, § 11. (VSB Exh. 27 at p. VSB 0523).

- CAV effectively air-brushed from its written decision any trace of VCDL's argument concerning the invalidity of the local rule, and the statutory authorities cited in support thereof. It did so in order to white-wash the Record and obfuscate, if not completely conceal from the public, VCDL's principal argument-that the five-page rule is in direct conflict with the last sentence of Rule 4:15(c), and is therefore in flagrant violation of the statutory scheme created by VA. CODE ANN. §§ 8.0l-3(A), 8.01-4, and 17.1-503(A), and consequently is invalid as a matter of law. (VSB Exh. 27 at p. VSB 0523).

- From CAV's decision, it is apparent that it deliberately chose to ignore those governing statutes. How else could the Court have purported to address the "reasonableness" of the rule, without first addressing whether the authority had been conferred upon the FCCC, by the General Assembly, to enact such a rule? The panel's-and then the full court's- apparent "oversight" in failing to address the validity of the local rule demonstrates that, like many of the courts of this Commonwealth, the CAV does not understand the concepts of procedural and substantive due process of law. (VSB Exh. 27 at p. VSB 0524).

- The panel's conscious decisions: (i) not to address VCDL's argument that the local rule is statutorily invalid; and (ii) not to include, in its written decision, the relevant statutory language, or at least mention the statutes that were cited in VCDL's MoL filed in support of its Petition for a Writ of Mandamus, is compelling evidence that the panel was eager to bury the issue. That is a tactic commonly used by trial and appellate courts alike. By airbrushing from their decisions any mention of inconvenient facts, inconvenient laws, and inconvenient arguments-that is, those that conflict with whatever a court's particular agenda happens to be, with respect to a particular case, the judiciary maintains the *appearance* that it is committed to the rule of law, when, in reality, many judicial decisions are completely unmoored therefrom. (VSB Exh. 27 at pp. VSB 0525-0526).

- By omitting any reference to inconvenient facts, laws, and arguments, courts are able to ensure that anyone reading their decisions will be left in the dark as to the meritorious arguments that were raised in opposition to the court's decision. In this case, CAV's omission from its opinion, of any reference to the statutes cited by VCDL, in support

of its argument that the local rule is invalid, will ensure that when a stranger to the litigation-for example, an attorney conducting legal research-reads that decision, he will not be alerted to CAV's infidelity to the rule of law, and he will remain in the dark as to the statutory authority that was cited in support of VCDL's challenge to the validity of the rule. In that way, CAV can minimize the likelihood that some other equally annoying attorney will try to challenge the same invalid rule. (VSB Exh. 27 at p. VSB 0526).

- By disingenuously arrogating to themselves the authority to control the narrative, judges are able to purge from the record any facts, laws, or arguments that might cast doubt on the legitimacy of their decisions. But judges with integrity understand *they do not* control the narrative. (VSB Exh. 27 at p. VSB 0526).

- Only in that way, can We, the People, ensure that the courts of this Commonwealth conduct themselves with integrity and intellectual honesty, and that they remain faithful to the rule of law. In other words, every judge in every case in every court must provide a reasoned explanation that squarely addresses, *on the merits,* each and every argument raised by either counsel, or, alternatively, explains why the argument cannot, should not, or need not be addressed. (VSB Exh. 27 at p. VSB 0527).

- Tyranny is defined as the arbitrary exercise of governmental power. It is unacceptably ironic that in the Commonwealth of Virginia, the Judicial branch of government, whose sacred duty it is to protect the People from tyranny of government, is, itself, the greatest source of tyranny in the lives of the People. We reject the double-standard created by the courts of this Commonwealth, in which there is a dichotomy between those who govern and those they govern-a justice system in which litigants and lawyers are bound by the rules but the Courts are free to disregard them, at their whim, without explanation, and, by refusing to operate 'in the sunshine,' create the mirage that their decisions are governed by the rule of law. But despite what the judiciary, writ large, apparently believes, We, the People, are not dumb. We recognize the difference between intellectual honesty and intellectual sophistry; between judicial integrity and judicial chicanery; and between the rule of law and the whim of individual judges masquerading as the rule of law. (VSB Exh. 27 at pp. VSB 0529-0530).

- But CAV's decision-making process, in which it first determined its desired outcome, and then engineered its written decision to omit any reference to anything in the Record that would cast doubt upon that decision, including, whenever necessary, ignoring the governing law, is not atypical; it is not anomalous; and it is not an aberration. (VSB Exh. 27 at p. VSB 0531).

- But CAV's decision is also a judicial middle finger directed at VCDL, its counsel, Leiser, the Supreme Court of Virginia, the General Assembly, and, most disturbingly, to the constitutionally protected due process rights of litigants, and therefore, to the rule of law, itself. (VSB Exh. 27 at p. VSB 0532).

- CAV's desperate effort to distract from the issue properly before it-the statutory *validity, vel non,* of the five-page local rule-an issue it has conveniently avoided addressing, and to instead, attempt to direct the discussion to the 'reasonableness' of the rule was disingenuous and intellectually bankrupt. (VSB Exh. 27 at pp. VSB 0536-537).

Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to

Certification) at p. VSB 0030.

28. On July 6, 2023, the Chief Judge of the Fairfax Circuit Court filed her brief

in opposition to VCDL's petition. VSB Exh. 28 at pp. VSB 0542-0569.

Admitted by Respondent at VSB Exh. 1B (Respondent's Answer to

Certification) at p. VSB 0030.

29. By Order entered December 7, 2023, the SCV dismissed VCDL's petition

for appeal as to assignments of error 1, 2, and 3. The SCV found

assignments 1, 2, and 3 insufficient because they did not address any

finding or ruling of the CAV or any failure of the CAV to rule on in issue

in Virginia Citizens Defense League v. Circuit Court of Fairfax County,

Court of Appeals No. 0077-23-4, from which an appeal was sought. The

SCV refused assignment of error 4. VSB Exh. 29 at p. VSB 570. Admitted

by Respondent at VSB Exh. 1B (Respondent's Answer to Certification) at

p. VSB 0030.

### NATURE OF MISCONDUCT

The Court unanimously finds that the evidence, particularly the following

25

statements in Respondent's briefs:

- VSB Exh. 13 (Respondent's Petition for Appeal to the Supreme Court of Virginia filed December 1, 2023) at pages 17, 34, and 35, respectively pp. VSB 0247 and 0263-0264;

- VSB Exh. 16 (Respondent's Petition for Rehearing to the Supreme Court of Virginia filed May 29, 2024) at pages 1, 3-5, and 7-10, respectively pp. VSB 0286, 0288-0290, and 0292-0295;

- VSB Exh. 24 (Respondent's Petition for Rehearing *En Banc* filed May 3, 2023 in the Court of Appeals of Virginia) at pages 8, 10, 12, 14-19, respectively pp. VSB 0447, 0449, 0451, and 0453-0458; and

- VSB Exh. 27 (Respondent's Petition for Appeal to the Supreme Court of Virginia filed June 15, 2023) at pages 21, 23, 24, and 27, respectively pp. VSB 0523, 0525-0526, and 0529.

establishes by clear and convincing evidence that Respondent violated the following

Rules of Professional Conduct:

RULE 8.2    Judicial Officials[3]
    A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge or other judicial officer.

RULE 8.4    Misconduct
    It is professional misconduct for a lawyer to:
        …
    (b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice

---

[3] Comment 1 to Rule 8.2: "False statements by a lawyer concerning the qualifications or integrity of a judge can unfairly undermine public confidence in the administration of justice. To maintain the fair and independent administration of justice, lawyers are encouraged to continue traditional efforts to defend judges and courts unjustly criticized."

Committee Commentary: "…the dignity of courts and the attendant requirement that judicial officials be treated with respect acts as a restraint on lawyer criticism of those officials…"

law[.]

## **SANCTIONS PHASE**

The Court then convened the sanctions phase of the proceeding.

The VSB presented a Certification of Respondent's prior disciplinary record, which the Court subsequently admitted into evidence as VSB Exhibit 30 without objection. Respondent's disciplinary record consists of a Public Reprimand with Terms issued by a three-judge court after a two-day hearing on February 13-14, 2023, for Respondent's violation of Rule 8.2 based on Respondent's false or reckless statements about Judge James P. Fisher of the Loudoun County Circuit Court in the NAG matter. The NAG matter is one of two cases at issue in this disciplinary proceeding. Respondent renewed his misconduct in the NAG matter, as set forth herein, just months after he received the Public Reprimand.

Counsel for the VSB presented argument regarding the sanction to be imposed on Respondent for the misconduct found. Respondent declined the opportunity to present argument regarding the sanction to be imposed. The Court recessed to deliberate.

## **DETERMINATION/THREE-YEAR SUSPENSION**

After due consideration of the evidence as to aggravation and argument of counsel, the Court reconvened to announce its sanction of a Three-Year Suspension, effective September 22, 2025. The Court stated in part that, "…This is not a first offense, and there has been a previous sanction. The same behavior is continuing, and there appears to be no recognition of the seriousness of these violations of the disciplinary rules. Therefore, it is ordered that the Respondent shall receive a suspension for a period of three years."

Accordingly, it is hereby ORDERED that Respondent's license to practice law in

the Commonwealth of Virginia be, and the same hereby is, SUSPENDED for a period of THREE YEARS, effective September 22, 2025.

It is further ORDERED that Respondent must comply with the requirements of Part Six, Section IV, Paragraph 13-29 of the Rules of the Supreme Court of Virginia. Respondent must forthwith give notice by certified mail, return receipt requested, of the Suspension of his license to practice law in the Commonwealth of Virginia, to all clients for whom Respondent is currently handling matters and to all opposing attorneys and presiding judges in pending litigation.   Respondent must also make appropriate arrangements for the disposition of matters then in Respondent's care in conformity with the wishes of his clients.  Respondent must give such notice immediately and in no event later than 14 days from the effective date of the Suspension, and make such arrangements as are required herein as soon as practicable and in no event later than 45 days from the effective date of the Suspension.  Respondent must also furnish proof to the VSB within 60 days of the effective date of the Suspension that such notices have been timely given and such arrangements made for the disposition of matters.

It is further ORDERED that, if Respondent is not handling any client matters on the effective date of the Suspension, Respondent must submit an affidavit to that effect to the Clerk of the Disciplinary System of the VSB.  Issues concerning the adequacy of the notice and arrangement required by Paragraph 13-29 must be determined by the VSB Disciplinary Board, or, if demanded pursuant to Paragraph 13-29, another three-judge Circuit Court, which may impose a sanction of Suspension or Revocation for failure to comply with these requirements.

It is further ORDERED that the Clerk of the Disciplinary System of the VSB must assess all costs pursuant to Paragraph 13-9.E.

It is further ORDERED that the Clerk shall send a copy teste of this Final Judgment Memorandum Order to Respondent, Phillip Ben-Zion Leiser, by certified mail, return receipt requested, to The Leiser Law Firm, 1750 Tysons Blvd., Ste. 1500, Tysons Corner, VA 22102, his address of record with the VSB; to the Honorable Joanne Fronfelter, Clerk of the Disciplinary System, Virginia State Bar, 1111 E. Main Street, Suite 700, Richmond, VA 23219; and to Renu M. Brennan, Bar Counsel, Virginia State Bar, 1111 E. Main Street, Suite 700, Richmond, VA 23219.

The hearing was recorded by John Weaver of ICR Rudiger & Green Court Reporting, 8551 Rixlew Lane, Suite 330, Manassas, Virginia 20109, telephone 703-331-0212.

This Order is the final judgment of this Court as provided by Rule 5:21(b)(2)(ii) of the Rules of the Supreme Court of Virginia.

ENTERED: _September 26, 2025_

_Cheryl V. Higgins_

The Honorable Cheryl V. Higgins
Chief Judge Designate

29